SELLERS, Acting Chief Justice.[1]
James C. Wood, a retired circuit court judge, appeals from a summary judgment in favor of: the State of Alabama; Luther Strange, in his capacity as Attorney General for the State of Alabama;[2] David G. Bronner, in his capacity as chief executive officer of the Employees' Retirement System of Alabama; the Board of Control of the Employees' Retirement System of Alabama ("the Board of Control"); and Thomas L. White, Jr., in his capacity as Comptroller for the State of Alabama (hereinafter collectively referred to as "the State defendants").[3]
I. Facts and Procedural History
This appeal involves increases in the rates of contributions judges and justices are required to pay into the Judicial Retirement Fund ("the Fund"), pursuant to § 12-18-5, Ala. Code 1975. The Fund was established under the provisions of Act No. 1163, Ala. Acts 1973, codified at § 12-18-1 et seq., Ala. Code 1975, to provide retirement benefits to qualified judges and justices. The Fund is administered by the Board of Control. See § 12-18-2(a), Ala. Code 1975.
Section 12-18-5 provides that membership in the Fund is mandatory for judges and justices elected or appointed to office after September 18, 1973. When the Fund was established, each judge and justice participating in the Fund was required to "contribute to [the Fund] four and one-half percent of his earnable compensation." Id. In 1975, § 12-18-5 was amended to provide that, after February 1, 1977, "the rate *325 of contribution to be paid by the justices and judges shall be six percent of their salary." Ala. Acts 1975, 4th Special Sess., Act No. 66, § 4, p. 2680. On August 11, 1999, Judge Wood was appointed to the 13th Judicial Circuit in Mobile, at which time he began contributing six percent (6%) of his annual salary to the Fund. Judge Wood served until his retirement on January 15, 2013.
On June 15, 2011, the legislature passed Act No. 2011-676, Ala. Acts 2011 ("the Act"), which further amended § 12-18-5 to provide for additional increases in contribution rates to the Fund.[4] Section 12-18-5, as amended, provides:
"For all pay dates beginning on or after October 1, 2011, the contribution to be paid by the justices and judges shall be eight and one-quarter percent (8.25%) of their salary. For all pay dates beginning on or after October 1, 2012, the rate of contribution to be paid by the justices and judges shall be eight and one-half percent (8.5%) of their salary."
Judge Wood was serving his second official term[5] when both increases in contribution rates took effect. Beginning October 1, 2011, Judge Wood's contribution to the Fund increased from six percent (6%) to eight and one-fourth percent (8.25%), and, beginning October 1, 2012, his contribution increased to eight and one-half percent (8.5%). As noted, Judge Wood retired on January 15, 2013.
In June 2012, Judge Wood, individually, and on behalf of a purported class of "all members" of the Fund, sued the State defendants, alleging that the mandatory increases in contributions to the Fund reduced Judge Wood's net pay without affording him any additional retirement benefits. He alleged that the increases in contributions violated the Judicial Compensation Clause of Art. VI, § 148(d), Constitution of Alabama of 1901 ("the Compensation Clause"), which provides that "[t]he compensation of a judge shall not be diminished during his official term."
In his complaint, Judge Wood sought a judgment declaring the Act unconstitutional as violative of the Compensation Clause. He requested relief in the form of an order restoring to him any and all sums by which his compensation allegedly had been diminished, permanently enjoining the State defendants from continuing to enforce the Act against him, and awarding him costs and attorney fees. He also sought similar relief under 42 U.S.C. § 1988. Finally, he sought to have a class of similarly situated judges and justices certified.
The State defendants, pursuant to Rule 56, Ala. R. Civ. P., filed a motion for a summary judgment, arguing that Judge Wood's claims were due to be dismissed on the basis of immunity and mootness.[6] The *326 State defendants also argued that the increases in mandatory contributions did not diminish a judge's or justice's compensation in violation of the Compensation Clause. In response, Judge Wood moved the trial court to enter a summary judgment declaring the Act unconstitutional.
In May 2017, after considering the evidence and the parties' arguments, the trial court entered a summary judgment in favor of the State defendants and against Judge Wood, upholding the Act. In its judgment, the trial court stated:
"Rather than diminishing 'compensation,' the changes in retirement contribution rates implemented by [the Act] simply increased the amount contributed by all education and state employees, including judges, to help pay for their retirement benefits. Indeed, such changes have been made before-in 1975 the legislature increased contribution rates for participants including judges. See Acts 1975, 4th Ex. Sess., No. 66, p. 2680, § 4. Moreover, it is undisputed that judges retain ownership over their own contributions and that they have the right to withdraw their contributions from the retirement system, with interest, should they choose to do so at the end of their active employment. [ Ala. Code 1975, § 12-18-8(b) ]. The Compensation Clause is not violated, nor is the independence of the judiciary threatened, by [the Act's] broadly applicable increase to retirement benefit costs. See United States v. Hatter, [532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001) ] (applying the federal Compensation Clause to uphold the constitutionality of a Medicare cost increase that applied to federal employees in general, including judges)."[7]
Judge Wood appealed.
II. Discussion
Judge Wood argues that the trial court erred by entering a summary judgment in favor of the State defendants-upholding the Act. The trial court entered the summary judgment based on the merits of Wood's claims. However, this Court is compelled to address at the outset the State defendants' arguments concerning immunity and mootness because those arguments implicate subject-matter jurisdiction. See Ex parte Smith, 438 So.2d 766, 768 (Ala. 1983) ("[I]t is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu."). Without subject-matter jurisdiction, neither the trial court nor we can reach the merits.
A. Immunity
In Alabama Department of Corrections v. Montgomery County Commission, 11 So.3d 189 (Ala. 2008), this Court stated the following well established law regarding sovereign or State immunity:
"Section 14, Ala. Const. 1901, provides: '[T]he State of Alabama shall never be made a defendant in any court of law or equity.' (Emphasis added.) 'The wall of immunity erected by § 14 is nearly impregnable.' Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002). Indeed, as regards the State of Alabama and its agencies, the wall is absolutely impregnable. Ex parte Alabama Dep't of Human Res., 999 So.2d 891, 895 (Ala. 2008) ('Section 14 affords absolute immunity to both the State and State agencies.');
*327 Ex parte Jackson County Bd. of Educ., 4 So.3d 1099, 1102 (Ala. 2008) (same); Atkinson v. State, 986 So.2d 408, 410-11 (Ala. 2007) (same); [In re] Good Hope [Contracting Co. v. Alabama Dep't of Transp., 978 So.2d 17 (Ala. 2007) ] (same); Ex parte Alabama Dep't of Transp., 764 So.2d 1263, 1268 (Ala. 2000) (same); Mitchell v. Davis, 598 So.2d 801, 806 (Ala. 1992) (same). 'Absolute immunity' means just that-the State and its agencies are not subject to suit under any theory.
" 'This immunity may not be waived.' Patterson, 835 So.2d at 142. Sovereign immunity is, therefore, not an affirmative defense, but a 'jurisdictional bar.' Ex parte Alabama Dep't of Transp., 985 So.2d 892, 894 (Ala. 2007). The jurisdictional bar of § 14 simply 'preclud[es] a court from exercising subject-matter jurisdiction' over the State or a State agency. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala. 2003). Thus, a complaint filed solely against the State or one of its agencies is a nullity and is void ab initio. Ex parte Alabama Dep't of Transp. (In re Russell Petroleum, Inc. v. Alabama Dep't of Transp.), 6 So.3d 1126 (Ala. 2008).... Any action taken by a court without subject-matter jurisdiction-other than dismissing the action-is void. State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029 (Ala. 1999)."
11 So.3d at 191-92.
"Because the immunity of the State is absolute, this Court has usually provided that any exceptions to that immunity extend only to suits naming the proper State official in his or her representative capacity. See Latham [v. Department of Corr.], 927 So.2d [815,] 821 [ (Ala. 2005) ] (laying out the exceptions to sovereign immunity). Even when an action names the proper State official in his or her representative capacity, such an action will be barred if it is, in substance, an action against the State for damages. See Ex parte Town of Lowndesboro, 950 So.2d 1203, 1206 (Ala. 2006) ('Additionally, a party may not indirectly sue the State by suing its officers or agents " 'when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.' " ' (quoting Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002), quoting in turn State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) ) (emphasis added in Patterson ) )."
Ex parte Alabama Dep't of Transp., 978 So.2d 17, 22 (Ala. 2007).
The immunity afforded State officers sued in their official capacities, however, is not unlimited:
"This Court has recognized six categories of actions that survive the § 14 bar: (1) actions to compel State officials to perform their legal duties, Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 679 (1971) ; (2) actions to enjoin State officials from enforcing an unconstitutional law, id.; (3) actions to compel State officials to perform ministerial acts, 287 Ala. at 229-30, 250 So.2d at 678-79 ; (4) actions under the Declaratory Judgment Act, § 6-6-220 et seq., Ala. Code 1975, seeking construction of a statute and how it applies in a given situation, 287 Ala. at 230, 250 So.2d at 679 ; (5) valid inverse-condemnation actions brought against State officials in their representative capacities, Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 58 (Ala. 2006) ; and (6) actions to enjoin State officials from acting fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013). This Court has also noted that ' "an action is one against the [S]tate when a favorable result for the plaintiff would directly affect *328 a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate." ' Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala. 2004) (quoting Shoals Cmty. College v. Colagross, 674 So.2d 1311, 1314 (Ala. Civ. App. 1995) )."
Ex parte Retirement Sys. of Alabama, 182 So.3d 527, 533-34 (Ala. 2015) (footnote omitted).
Based on the above principles, the State of Alabama is absolutely immune from Judge Wood's suit under § 14. Judge Wood has also sued the Board of Control on the basis that it manages the Fund. The State defendants argue that the Board of Control is also immune under § 14 because, they say, the Board is an instrumentality of the State and is therefore immune from suit to the same extent as the State. Judge Wood presents no argument to the contrary. See Bronner v. State, 171 So.3d 614, 619 (Ala. 2014) ("See Art. I, § 14, Ala. Const. 1901; Ala. Code 1975, §§ 16-25-2(b) and 36-27-2(b) (recognizing that the boards of control of the [Teachers' Retirement System] and the [Employees' Retirement System] are instrumentalities of the State, that the [Teachers' Retirement System] and the [Employees' Retirement System] are funded by the State, and that their officers and employees are immune from suit in their official capacities to the same extent as the State, its agencies, and its officers and employees)."). "[T]he immunity afforded the State by § 14 applies to instrumentalities of the State and State officers sued in their official capacities when such an action is effectively an action against the State." Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 332 (Ala. 2011). "[A]ny exceptions to [this] immunity extend only to suits naming the proper State official in his or her representative capacity." Ex parte Department of Transp., 978 So.2d at 22. In this case, Judge Wood has sued only the Board of Control, not any of its members in their official capacities. Accordingly, the Board of Control is also entitled to § 14 immunity.
Judge Wood has also sued Bronner in his capacity as chief executive officer of the Employees' Retirement System and White in his capacity as State comptroller. The State defendants argue that Judge Wood's claim for money damages against Bronner and White in their official capacities is also barred by § 14 immunity because, they say, any recovery on that claim would affect the financial status of the State treasury. As indicated, Judge Wood seeks restitution from Bronner and White in the form of "any and all sums by which [his and the purported class members'] compensation has been ... diminished during their official terms through enforcement of [the allegedly unconstitutional Act]." The State defendants rely upon Ex parte Retirement Systems of Alabama, supra, a case decided after the commencement of this action, to support their argument that this Court lacks subject-matter jurisdiction to award money damages in the form of a refund, apparently even when those damages are the result of the implementation of an allegedly unconstitutional act resulting in the alleged diminution of a judge or justice's compensation during the judge or justice's official term in office. In Retirement Systems, the plaintiffs, public educators and their spouses, sued various State officials seeking to recover restitution for funds paid for coverage pursuant to an allegedly invalid insurance policy that had been implemented by the officials. The plaintiffs alleged that the policy violated various provisions of the Alabama Constitution of 1901, the United States Constitution, and 42 U.S.C. § 1983. As in this case, the State officials moved the circuit court to dismiss the complaint, arguing, among other things, that the *329 claims against them were barred by § 14 immunity.
The Court in Retirement Systems noted that " 'an action is one against the [S]tate when a result favorable for the plaintiff would ... result in the plaintiff's recovery of money from the [S]tate.' " 182 So.3d at 536 (quoting Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala. 2004) ). The plaintiffs, citing Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831 (Ala. 2008) (" Harbert"), argued that their request for restitution in the form of incidental monetary relief was not barred by the doctrine of sovereign immunity because, they said, a court may order State officers to pay the predetermined amount as a ministerial duty. The plaintiffs argued that, because the funds did not belong to the State, the State treasury would suffer no more than it would have suffered had the State officials originally performed their ministerial duties and paid the debts. This Court concluded that the plaintiffs' reliance on Harbert was misplaced:
"In Harbert, this Court addressed, among other things, whether Harbert International, Inc. ('Harbert'), could maintain an action against the Alabama Department of Transportation ('ALDOT'), seeking, among other things, (1) the return of liquidated damages withheld under an allegedly unlawful provision of Harbert's contract with ALDOT, (2) $291,750 of a retainage ALDOT owed under the contract, and (3) compensation for extra work Harbert had performed under the contract. This Court noted that 'mandamus relief is available in certain situations to compel a State officer to perform the ministerial act of tendering payment of liquidated or certain sums the State is legally obligated to pay under a contract.' Harbert, 990 So.2d at 842. We went on to affirm the circuit court's judgment insofar as it required ALDOT to pay Harbert the liquidated damages and retainage owed under the contract but reversed the judgment insofar as it directed the payment to Harbert of unliquidated damages for its breach-of-contract claim.
"Although the public-education plaintiffs argue that the restitution they are requesting is not 'compensatory or unliquidated damages' and is 'an amount known to [the PEEHIP defendants],' public-education plaintiffs' brief, at 14, the restitution requested in this case is more in the nature of a refund of amounts overpaid than a request for liquidated or certain damages owed under contract. This Court has determined that such claims are barred by § 14."
182 So.3d at 536. Accordingly, in Retirement Systems, this Court held that the plaintiffs' claims for restitution in the form of a refund of amounts overpaid, as well as for costs and attorney fees, were barred by the doctrine of sovereign immunity insofar as the claims would impact the State treasury. 182 So.3d at 137. The Court further held that the plaintiffs' claims for monetary relief based on federal law were also barred by the Eleventh Amendment to the United States Constitution. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' " (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ) ).
We note that Judge Wood, for the first time in his reply brief, generally asserts that the first, second, third, fourth, and sixth categories of exceptions as set forth in many of our cases, including Retirement Systems, prevent the State defendants from claiming immunity under § 14. Judge Wood offers this Court no response to the State defendants' reliance on Retirement Systems, including the State defendants' contention that, under principles discussed *330 in Retirement Systems, Judge Wood's claim for monetary damages implicates a refund and therefore is barred by § 14 immunity. Nor does Judge Wood request this Court to reconsider, distinguish, or overrule Retirement Systems. Judge Wood also has not offered any response to the State defendants' assertion of immunity for claims arising under 42 U.S.C. § 1988.
In Blevins v. Hillwood Office Center Owners' Ass'n, 51 So.3d 317, 322 (Ala. 2010) this Court observed:
"This Court has often said that it is ' " 'duty bound to notice ex mero motu the absence of subject-matter jurisdiction.' " ' Riley v. Hughes, 17 So.3d 643, 648 (Ala. 2009) (emphasis added) (quoting Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala. 2003), quoting in turn Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala. 1994) ). However, just because the Court is duty bound to notice the absence of subject-matter jurisdiction, it does not follow that it is so bound to construct theories and search the record for facts to support the existence of jurisdiction for plaintiffs who choose to stand mute in the face of a serious jurisdictional challenge."
Based on the facts and arguments presented in this appeal, this Court concludes that Judge Wood has failed to sustain his burden of establishing subject-matter jurisdiction to award money damages upon alleged violations of the Compensation Clause of the Alabama Constitution or 42 U.S.C. § 1988 stemming from legislatively mandated increases in a judge's or justice's contributions to the Fund. Accordingly, State defendants Bronner and White are entitled to dismissal of all claims against them in their official capacities for money damages.
B. Mootness
Judge Wood also sought prospective injunctive relief in the form of an order permanently restraining the State defendants from continuing to enforce the allegedly unconstitutional Act against him. We agree with the State defendants, however, that Judge Wood's claim for prospective injunctive relief has become moot by virtue of his retirement from judicial office.
"When an action becomes moot during its pendency, the court lacks power to further adjudicate the matter.
" ' "The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties." Crawford v. State, 153 S.W.3d 497, 501 (Tex. App. 2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993) ). "A case becomes moot if at any stage there ceases to be an actual controversy between the parties." Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999) ).'
" Chapman v. Gooden, 974 So.2d 972, 983 (Ala. 2007) (first emphasis added). See also Steffel v. Thompson, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ('[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.')."
South Alabama Gas Dist. v. Knight, 138 So.3d 971, 974-76 (Ala. 2013).
Judge Wood was serving his second official term as a circuit judge when the Act was passed and when both increases in contribution rates took effect. Judge Wood retired on January 15, 2013, ending his official term in office and precluding the possibility that the Act would impact his compensation in the future. As indicated, the Compensation Clause prohibits the diminishment of a judge's compensation only "during [the judge's] official term." When Judge Wood's official term ended upon his retirement, he ceased making contributions *331 to the Fund; after that point, there was no longer any actual controversy between the parties necessitating an order prohibiting future application of the (allegedly unconstitutional) Act.[8]
III. Conclusion
An order entered without subject-matter jurisdiction is void. McDaniel v. Ezell, 177 So.3d 454 (Ala. 2015) Because Judge Wood's claim for money damages is not shown to be within this Court's subject-matter jurisdiction and his claim for prospective injunctive relief is moot, also defeating subject-matter jurisdiction, we cannot address the constitutionality of the Act. Accordingly, this Court holds that the trial court's judgment upholding the Act against Judge Wood's constitutional challenge is void. We dismiss the appeal, vacate the summary judgment in favor of the State defendants, and dismiss the action for failure to establish subject-matter jurisdiction as to the claim for monetary damages and on the basis of mootness as to the claim for prospective injunctive relief.
APPEAL DISMISSED; JUDGMENT VACATED; CASE DISMISSED.
J. Gorman Houston, Jr., Champ Lyons, Jr., Jean Williams Brown, Terry L. Butts, and R. Bernard Harwood, Jr., Special Justices, concur.
Ralph D. Cook, Special Justice, concurs in the result.
COOK, Special Justice (concurring in the result).
I disagree with the main opinion's conclusions regarding the applicability of the immunity provisions of Art. I, § 14, Const. of Alabama 1901, to all defendants and claims in this case. However, under the facts of this case, I believe this nondiscriminatory increase in retirement contributions, which also constituted a reduction in take-home pay, was an indirect decrease in compensation that does not violate the Compensation Clause contained in the Alabama Constitution. Therefore, I concur in the result.

Canon 3.C of the Canons of Judicial Ethics requires a Justice to disqualify himself or herself in any proceeding in which the Justice's impartiality might be reasonably questioned. Having determined that the issue in this case affects all justices who were actively serving in that capacity as of October 1, 2011, and recognizing that eight of the Justices on this Court were serving as active justices as of October 1, 2011, those eight Justices ex mero motu recused themselves from this case on August 30, 2017, leaving William B. Sellers as the sole remaining Associate Justice. On August 31, 2017, pursuant to § 12-2-5, Ala. Code 1975, Associate Justice Sellers was appointed to serve as Acting Chief Justice in this case and, pursuant to § 149, Ala. Const. 1901 (Off. Recomp.), originally § 6.10 of Amendment No. 328, Ala. Const. 1901, appointed the following former Associate Justices to serve with him as the special Supreme Court in this case: J. Gorman Houston, Jr., Champ Lyons, Jr., Ralph D. Cook, Jean Williams Brown, Terry L. Butts, and R. Bernard Harwood, Jr.

During the pendency of this case, Strange resigned from the office of Attorney General to accept an appointment to the United States Senate. Pursuant to Rule 25(d), Ala. R. Civ. P., his successor was automatically substituted as a party.

In the style of his complaint, Judge Wood identified each State official he has sued as a defendant in both his official capacity and "individually." On appeal, he has not asserted that they are liable to him in their individual capacities.

The Act, in addition to increasing contribution rates for justices and judges, also increased contribution rates for participants in the Teachers' Retirement System of Alabama and the Employees' Retirement System of Alabama.

The parties agree that, for purposes of determining whether a judge's compensation has been diminished during his or her official term in violation of the Judicial Compensation Clause of Art. VI, § 148(d), Ala. Const. 1901, "official term" means the term of office a judge serves after his or her appointment or election until he or she is re-elected to a new term (or resigns or retires prior thereto). We accept that definition for the purpose of this appeal based upon the aforementioned agreement of the parties. In Judge Wood's case, the official term at issue spanned the period from January 2007 until January 2013.

The State defendants also asserted that Judge Wood lacked "standing" to bring claims against the Attorney General. Section 6-6-227, Ala. Code 1975, requires only service of a copy of the complaint on the Attorney General in an action challenging the constitutionality of a state statute. It does not appear that Judge Wood sought any relief from the Attorney General; therefore, we pretermit consideration of the issue of standing.

The trial court did not rule on Judge Wood's request to certify a class.

We also note that the State defendants argue that any claim for prospective injunctive relief Judge Wood asserted on behalf of the purported class members is moot for a different reason. Specifically, the State defendants assert, and Judge Wood does not contest, that the judges and justices that would be members of the purported class have started new terms since the increases in contribution rates took effect. We agree. Those judges and justices will not have their contribution rates increased, pursuant to the Act, during their current official terms.