Rel: October 31, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0259

————————————————

**Ex parte Alabama-West Florida Conference of the United Methodist Church, Inc.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Auburn Methodist Coalition, Inc.**

**v.**

**Alabama-West Florida Conference of the United Methodist Church, Inc.)**

**(Lee Circuit Court: CV-23-900398)**

COOK, Justice.

Auburn Methodist Coalition, Inc. ("the Coalition"), is a nonprofit corporation. It alleges that it is composed of certain members of Auburn United Methodist Church ("AUMC" or "the Church"). The Coalition sued Alabama-West Florida Conference of the United Methodist Church, Inc. ("the AWFC"), in the Lee Circuit Court. The AWFC is a regional body of the United Methodist Church ("the UMC").

In its complaint, the Coalition asked the trial court to order a vote of the full AUMC membership on whether the Church should disaffiliate from the UMC and to declare that the UMC and the AWFC lack any cognizable interest in the real or personal property of AUMC.

The AWFC moved to dismiss the Coalition's complaint, arguing, among other things, that the ecclesiastical abstention doctrine deprived the trial court of subject-matter jurisdiction over the Coalition's claims. The trial court denied the AWFC's motion to dismiss, and the AWFC petitioned this Court for a writ of mandamus directing the trial court to dismiss the Coalition's claims based on the ecclesiastical abstention doctrine. As explained below, because, under the present facts, the purported statutory basis for a disaffiliation vote is inapplicable and the trial court cannot order a disaffiliation vote without running afoul of the

ecclesiastical abstention doctrine, we grant mandamus relief.

Facts and Procedural History

Auburn Methodist Episcopal Church, the predecessor to AUMC, was founded in 1837 as an unincorporated association. Throughout the years, the Church has acquired several parcels of property and developed them into a large church campus in the heart of downtown Auburn ("the local church property"). The 1843 deed to the original parcel of property states that the property was conveyed for the purpose of erecting and building

> "a house or place or worship for the use of the members of the Methodist Episcopal Church[1] … according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of said church at their general conference in the United States of America and in further trust and confidence that they shall at all times forever hereafter permit such ministers and preachers belonging to the said church as shall from time to time be duly authorized by the general conference of the ministers and preachers of the said Methodist Episcopal Church or by the annual conference authorized by the said General Conference to preach and expound God's holy word therein …."

Although some of the subsequent deeds to adjoining parcels of property

---

[1] In 1939, the Methodist Episcopal Church merged with other methodist denominations to become the Methodist Church. In 1968, the Methodist Church merged with the Evangelical United Brethren Church to form the United Methodist Church.

contain a similar trust clause in favor of the United Methodist denomination, others do not.[2]

In 1953, the Church incorporated pursuant to § 10-3-124, Ala. Code 1940, the predecessor of § 10A-20-2.01, Ala. Code 1975. In its articles of incorporation, the Church named the elected trustees of the church corporation and stated that they would "serve until a successor for each shall be duly elected by the Quarterly Conference of the Church."[3] It further stated that "[t]he Trustees shall not have any authority to mortgage or sell any of the church property without first being authorized to do so by a resolution adopted by a majority of the members of the Quarterly Conference of the Church at a duly called meeting in accordance with the Discipline of the Methodist Church and the laws of

---

[2]Known as the "trust clause," paragraph 2501 of the Book of Discipline, the UMC's governing instrument, provides that all local church property is held in trust for the United Methodist denomination.

[3]The minutes of the congregational meeting on incorporating the church were attached to the articles of incorporation. Those minutes reflect that a motion to have "the same Trustees as provided by the Church Discipline serve as the Trustees of the Incorporated Church" was passed at the meeting.

the State of Alabama."[4] Finally, it provided that "[t]he present church property and all other property, real, personal and mixed, of the Auburn Methodist Church shall become the property of this corporation ...." The articles of incorporation make no mention of disaffiliation or any process for terminating the incorporated church's connection with the United Methodist denomination. Although it was initially incorporated under the name "Auburn Methodist Church," the Church changed its corporate name to "Auburn United Methodist Church" in 1988.

As our Court explained in Ex parte Alabama-West Florida Conference of United Methodist Church, Inc., 401 So. 3d 1123 (Ala. 2024), in 2019,

> "after years of disagreement over issues of human sexuality, the UMC's General Conference -- the UMC's supreme legislative body -- held a special session and passed a plan for congregations that wished to leave the UMC for 'reasons of

---

[4]The Quarterly Conference was the forerunner of today's Charge Conference. A Charge Conference is a group that handles major administrative, property, and leadership matters of the congregation. The UMC's Book of Discipline provides that all members of the Charge Conference "shall be professing members of the local church, except where central conference legislation provides otherwise." However, only a select group of leaders within the Church are members of the Charge Conference. Also, according to the Book of Discipline, the district superintendent, a member of the Annual Conference and not the local church, is responsible for scheduling the Charge Conference meetings and presides at the meetings of the Charge Conference.

conscience' regarding the issues of human sexuality. The UMC's General Conference added paragraph 2553 to the Book of Discipline, which provided a 'gracious exit' for congregations that wished to disaffiliate from the UMC over issues related to human sexuality. Specifically, paragraph 2553 allowed congregations to exit with property if the disaffiliating congregations met certain financial and procedural obligations."

Id. at 1127 (footnote omitted).

In 2022, members of AUMC who disagreed with the UMC's stance on human sexuality began to internally discuss the prospect of disaffiliation from the denomination. However, the Coalition alleges that, despite repeated requests to hold a disaffiliation vote, AUMC's administrative board voted not to pursue disaffiliation from the UMC in April 2023.[5] Following that vote, disgruntled members of AUMC formed the Coalition.

In October 2023, the Coalition sued the AWFC. As relevant here, in its complaint, the Coalition asked the trial court to order a vote of the

---

[5]The terms "administrative board" and "church council" are used interchangeably to describe the same leadership body within the local church. According to the UMC's Book of Discipline, that leadership body "function[s] as the administrative agency of the charge conference," and the Charge Conference provides general oversight over the administrative board. The Book of Discipline further provides that members of the administrative board are elected by the Charge Conference.

AUMC membership on whether AUMC should disaffiliate from the UMC and to declare that the UMC and the AWFC lack any cognizable interest in the real or personal property of the AUMC. In November 2023, the Charge Conference of AUMC approved a resolution acknowledging the Coalition's lawsuit and stating that the Coalition "does not represent or in any way speak for AUMC, the AUMC Administrative Board, AUMC Board of Trustees, or the Charge Conference of AUMC." The Coalition alleges that, although AUMC's leadership bodies have expressed opinions about both disaffiliation and this lawsuit, the larger membership has been denied the opportunity to vote on either issue.

In November 2023, the AWFC moved to dismiss the Coalition's complaint, arguing, among other things, that the ecclesiastical abstention doctrine prohibited the trial court from adjudicating the issues raised in the complaint. The trial court denied the motion to dismiss. The AWFC filed a petition for a writ of mandamus, requesting that this Court direct the trial court to dismiss the underlying lawsuit based on the ecclesiastical abstention doctrine.

## Standard of Review

7

"We review de novo whether the trial court had subject-matter jurisdiction." Solomon v. Liberty Nat'l Life Ins. Co., 953 So. 2d 1211, 1218 (Ala. 2006). "The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus." Ex parte Liberty Nat'l Life Ins. Co., 888 So. 2d 478, 480 (Ala. 2003). Further,

> "[m]andamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."

Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995).

Discussion

A. The Question Presented

As noted above, in its complaint, the Coalition seeks both injunctive and declaratory relief. Specifically, it asks the trial court to order that the AUMC membership be "allowed to take a vote to disaffiliate from the [AWFC] and find that [AUMC] alone holds the legal and equitable title to its real and personal property."

The Coalition "further seeks a corresponding declaration that (a) neither the UMC nor the [AWFC] has any cognizable interest in the real or personal property of [AUMC] and (b) with respect to [AUMC'S]

8

property, any trust interest claimed by the UMC and/or [the AWFC] is invalid and unenforceable under Alabama law."

Importantly, at the hearing on the motion to dismiss filed by the AWFC, counsel for the Coalition urged that the court-mandated vote must come first, stating that, "in order to have the authority to seek quiet title, you have to have, under the Alabama Code, … a majority of the members." In other words, counsel for the Coalition acknowledged that its request for a declaratory judgment regarding the local church property was contingent on the outcome of a court-mandated vote on disaffiliation, explaining that "if you ultimately don't have that vote, then the whole issue of the future -- the validity of a claimed future interest [of the AWFC or the UMC] won't really matter."

The threshold issue in this case is, thus, <u>not</u> who holds title to the local church property. Rather, it is who is authorized to act on behalf of AUMC. The Coalition insists that only a court-mandated disaffiliation vote can resolve this threshold issue. Accordingly, the only ripe issue before this Court is whether the ecclesiastical abstention doctrine prevents the trial court from ordering a vote of the AUMC membership

9

on the question of disaffiliation.[6]

B. Relevant Caselaw

Under the ecclesiastical abstention doctrine, Alabama courts may not adjudicate disputes that are ecclesiastical in nature, including matters of church doctrine, polity, or internal governance. See Ex parte Bole, 103 So. 3d 40 (Ala. 2012). Generally, the process of disaffiliation is governed by ecclesiastical rule. See Aldersgate United Methodist Church of Montgomery v. Alabama-W. Fla. Conf. of United Methodist Church, Inc., 411 So. 3d 328 (Ala. 2024). Thus, a dispute concerning disaffiliation is typically considered an ecclesiastical matter -- not a civil one. See id. For instance, in Aldersgate, 44 member churches of the AWFC sought to disaffiliate from the UMC under a provision of the UMC's Book of Discipline that allowed member churches to exit the denomination with their property under certain conditions. After the AWFC declined to

---

[6]This Court has previously held that "'[d]eclaratory judgment proceedings will not lie for an "anticipated controversy."'" Creola Land Dev., Inc. v. Bentbrooke Hous., L.L.C., 828 So. 2d 285, 288 (Ala. 2002) (quoting City of Dothan v. Eighty-Four West, Inc., 738 So. 2d 903, 908 (Ala. Civ. App. 1999)); see also Baldwin Cnty. v. Bay Minette, 854 So. 2d 42, 45 (Ala. 2003) (holding that no justiciable controversy exists in declaratory-judgment action when claim asserts the interest of another, based on facts that have not taken place).

allow the member churches to vote to disaffiliate under that provision, the member churches asked a trial court to order the AWFC to grant them that right to vote. Our Court determined that the First Amendment prohibited the trial court from ordering a disaffiliation vote pursuant to that provision of the Book of Discipline.

C. Whether the Ecclesiastical Abstention Doctrine Prohibits the Trial Court from Ordering a Disaffiliation Vote in This Case

Here, the Coalition asks the trial court to order a disaffiliation vote. As noted above, the process of disaffiliation is generally governed by ecclesiastical rule. The Coalition, however, insists that, unlike the churches in Aldersgate, its asserted right to a court-mandated disaffiliation vote is based on an Alabama statute -- § 10A-20-2.03, Ala. Code 1975 -- and contends that this statutory provision recognizes the right of AUMC members to a vote on disaffiliation. Thus, it says, the trial court does not lack jurisdiction over the underlying action and this Court should reject the AWFC's request for mandamus relief.

It is true that, unlike the churches in Aldersgate, the Coalition does not seek to disaffiliate pursuant to the UMC's Book of Discipline but, instead, urges that § 10A-20-2.03 authorizes a court-mandated vote on disaffiliation. The AWFC, however, insists that § 10A-20-2.03 authorizes

11

no such thing. For the reasons explained below, we agree that the Coalition's reliance on § 10A-20-2.03 is misplaced.

Section 10A-20-2.03 provides:

"(a) Unless otherwise clearly stated in the deed or other instrument under which any church corporation organized under this article [i.e., Title 10A, Chapter 20, Article 2, Ala. Code 1975,] derives title <u>or unless afterwards approved by a majority of the adult members of the congregation of the church at a meeting held after announcement from the pulpit of the church at least seven days from the date of the announcement, the church corporation,</u> whether heretofore or hereafter organized and incorporated under this article, <u>shall be, and shall remain, a distinct and independent church corporation free from the regulation and control of any higher church body, denomination, or other organization with which it is now, or hereafter, associated or affiliated insofar as the management, control, disposition, or alienation of its real property is concerned</u>.

"(b) The provisions of this section shall in nowise be construed as conferring on any church organized under this article greater power of control over its real property than it possessed prior to its passage <u>nor shall this section be construed as diminishing in any respect the control or supervision of the real property of the church organized under this article exercised by any higher church body, denomination, or other organization prior to its passage</u>."

(Emphasis added.)

Section 10A-20-2.03(a) generally provides that the property of a local incorporated church is protected from outside control unless (1) the deed says otherwise or (2) the congregation itself chooses to submit to

12

denominational control by a properly announced majority vote.

Section 10A-20-2.03(b) clarifies that § 10A-20-2.03(a) does not grant any church corporation more control over its real property than it had before the statute was enacted and does not diminish any control or supervision exercised by a higher church body or denomination before the statute was enacted.

However, we need not determine the full scope of § 10A-20-2.03 to decide this case. That statute pertains only to real-property rights and does <u>not</u> address broader denominational affiliation or internal governance (i.e., deciding whether the congregation remains part of a denomination). It does <u>not</u> say that disaffiliation may be compelled or that denominational rules about disaffiliation are overridden by the statute. Because § 10A-20-2.03 does not mandate a congregational vote on denominational disaffiliation, that statute does not create a right to a vote on disaffiliation.

Further, the Coalition has also not alleged any other basis to require such a vote. For instance, it has not alleged that AUMC's governing documents created a right to a disaffiliation vote. In other words, the Coalition has not alleged that a vote was required under the

AUMC corporate documents or under any other provision of Alabama corporate law.  Thus, the Coalition has failed to identify any basis for its purported right to a court-mandated disaffiliation vote in this case.

<u>Conclusion</u>

Because the only issue ripe for this Court's consideration is whether the trial court may compel a congregational vote on disaffiliation, and because § 10A-20-2.03 does not enable the trial court to order such a vote, we conclude that the trial court erred in denying the AWFC's motion to dismiss in this case. We therefore grant the mandamus petition and direct the trial court to dismiss the complaint.

PETITION GRANTED; WRIT ISSUED.

Bryan, Sellers, Mendheim, McCool, and Lewis, JJ., concur.

Stewart, C.J., and Shaw and Wise, JJ., recuse themselves.

14